Kathy Y. **WILLIAMS**, Relator,

v.

**RIGHT STEP ACADEMY (CORP),**
**Commissioner of Economic**
**Security, Respondents.**

No. C3–99–1222.

Court of Appeals of Minnesota.

March 28, 2000.

---

Kathy Y. Williams, Richfield, pro se appellant.

Kent E. Todd, St. Paul, for respondent Commissioner.

Considered and decided by CRIPPEN, Presiding Judge, KLAPHAKE, Judge, and SHUMAKER, Judge.

## OPINION

CRIPPEN, Judge

Relator, faced with a demand that she accept a different job assignment, quit her employment with respondent Right Step Academy. Assuming that the change in assignment was unwarranted, which the commissioner's representative does not

dispute, relator contends that she had a good reason to quit because the new assignment was unsuitable, in light of her training and experience. Because she failed to produce adequate evidence to sustain this contention, we affirm.

## FACTS

Relator had worked with respondent Right Step Academy for four years. Her last experience with the Academy was as the site administrator for two schools. On or about February 22, 1999, the Academy leadership decided to remove relator from the site-administrator posts. In an evidentiary hearing on the question of whether relator was eligible for reemployment insurance benefits, the reemployment insurance judge found, and the commissioner's representative does not dispute, that "[t]here was no evidence to support that the claimant acted inappropriately in her position as [s]ite manager."

In addition, the commissioner does not dispute the reemployment insurance judge's finding that the Academy initially intended to transfer relator to a business management position but altered that decision because it was dissatisfied with relator's response when a personnel policy issue was discussed with her on February 22.

On February 24, the Academy offered relator the position of mentor-assistance service coordinator, a position that involved locating social services needed by students and their families. Believing that she was being unjustly disciplined, relator worked only one additional day before announcing that she was terminating her employment, calling to report that she would not work on February 26, the day her new position was to begin.

Relator contends that she "had no prior skills or knowledge in social services, or any knowledge of how to obtain these services." The reemployment insurance judge found that relator had a good reason to quit, caused by respondent, finding that there was no good reason for the Acade-

my's removal action and finding that relator was offered a position for which she had no training or experience. The commissioner's representative reversed the reemployment insurance judge, without addressing the topic of whether the employer's actions were unwarranted. The representative found that there was an insufficient showing of good cause to demonstrate that the mentor-assistance-service-coordinator position either constituted a demotion for relator or was unsuitable for her.

## ISSUE

Did relator have a good reason, caused by her employer, to quit her employment?

## ANALYSIS

On appeal from a denial of reemployment insurance benefits, the decisions of the commissioner's representative are to be accorded "particular deference," and a reviewing court must affirm if there is "reasonable support in the evidence" to sustain the representative's decision—without our deference to the insurance judge's decision. *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn.1995). The determination that an employee quit without a good reason caused by the employer, which would disqualify her from receiving reemployment insurance benefits under Minn.Stat. § 268.095, subd. 1(1) (1998), is a legal conclusion that must be based on findings that have the requisite evidentiary support. *Cook v. Playworks*, 541 N.W.2d 366, 368 (Minn.App.1996); *see also Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978) (interpreting predecessor statute, requiring "good cause" attributable to employer).

The employer initially satisfies its burden of proof regarding disqualification for reemployment insurance benefits by showing that the employee voluntarily quit. *Marz v. Department of Employment Serv.*, 256 N.W.2d 287, 290 (Minn.1977). At least initially, this switches the burden of proof to the employee on the question of

whether she has a good reason to quit that is caused by her employer.[1] *See id.*

 Relator does not claim that she would suffer a substantial decease in salary in the social-services job assignment. The Commissioner's representative also found "no showing that the responsibilities that the [second assignment] entailed were of less importance or that the knowledge and skill level was any less." *Cf. Marty v. Digital Equip. Corp.*, 345 N.W.2d 773, 775 (Minn.1984) (employee may have a right to reject "a job which requires substantially less skill than she possesses," without losing her right to reemployment insurance benefits); *Holbrook v. Minnesota Museum of Art*, 405 N.W.2d 537, 539 (Minn.App. 1987) (there may be a demotion if the transfer involves substantially fewer skills), *review denied* (Minn. July 15, 1987). Although this finding may invite the question as to who has the burden to produce evidence on the importance and the level of skills of the new assignment, we need not resolve that question here.[2] What is most important in this case is that, just as she does not claim the second job assignment involved less salary, relator never states a claim that the position involved less importance or fewer skills.

In contrast to a claim that she was given a job assignment requiring too few skills, appellant's contention was that she was given a job assignment for which she had too few skills. Although relator offered evidence that her skills were in administration and not in social services, suggesting that the job to which she was newly assigned was unsuitable for her, the record permits the finding of the commissioner's representative that the job was suitable for relator. *See Marz*, 256 N.W.2d at 290 (portraying switching burden of proof in voluntary-quit cases).

As the commissioner's ·representative recognized, relator's claim of having too few skills is defeated by her failure to rebut evidence that respondent would have provided her with the necessary training to enable her to perform the job. Supporting this finding, respondent showed that relator had been given training for her prior position as site administrator. Because the record supports the representative's finding that relator, with training, could have performed the new position to which she was assigned, the representative did not err in finding the absence of a good reason for relator's choice to quit.

The commissioner's representative also thought it significant that relator did not, prior to quitting, "inform the employer of the problem and provide the employer with a reasonable opportunity to correct the situation." The evidence shows that relator quit her employment immediately after being told of her new assignment. Because the representative's finding of no good reason is affirmed, we need not review the representative's suggestion that

---

1. Appellant terminated her employment early in 1999, before the effective date of reemployment compensations law amendments, 1999 Minn. Laws ch. 107. As a result, we do not review here the question of whether these amendments alter the burdens of the parties for proof of facts in the quasi-judicial proceedings that are employed to determine disputes on the question of whether applicants for reemployment insurance benefits are disqualified.

2. Once the employee presents a prima facie case that she had a good reason caused by the employer for leaving, the employer has the opportunity to rebut this case. *Marz*, 256 N.W.2d at 290. *Marz* makes it further evident that the burden of proof often switches back to the employer on parts of the issue on a voluntary quit. Thus, for example, when a demotion is acknowledged, the employee's good cause may be challenged on a claim that the demotion was prompted either by misconduct or other legitimate concerns of the employer. *See Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989) (employer has the burden to prove misconduct); *see also Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 102 (Minn.1999) (recognizing in discrimination case that the legitimate business reason for an action is a topic traditionally proven by the employer). Similarly, with respect to the question of whether or not a demotion has occurred, the employer may be the party with access to the information necessary to determine the facts in the case.

an employee must permit correction of a calculated decision of an employer on conditions of employment. More pertinent to the holding here, there can be little doubt that the choice of relator to quit immediately after the job change damaged her ability to show circumstances that might demonstrate her cause for quitting or to refute claims of the employer in that regard.

## DECISION

Realtor has failed to rebut evidence that she was offered a comparable position for which she had adequate skills. Thus she has not shown a good reason to quit that was caused by her employer.

**Affirmed.**