Nathaniel McNEILLY, Relator,

v.

DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.

No. A09–895.

Court of Appeals of Minnesota.

Feb. 16, 2010.

Nathaniel McNeilly, Mayer, MN, pro se relator.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by BJORKMAN, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Pro se relator Nathaniel McNeilly challenges a determination by the unemploy- ment-law judge (ULJ) that he is ineligible for unemployment benefits due to his failure to actively seek employment following a regular layoff from his seasonal employer. Because we conclude that relator is required to comply with the statutory requirements in order to be eligible for unemployment benefits and because substantial evidence in the record supports the ULJ's determination that relator was not actively seeking employment, we affirm.

## FACTS

Relator works as a foreman for Keenan & Sveiven, a landscaping business. The landscaping season generally encompasses the months of April through December, and relator has worked full-time during each season since 2005. During the off-seasons, relator established an unemployment-benefit account with respondent Minnesota Department of Employment and Economic Development (DEED) and received unemployment benefits. On December 2, 2008, relator was separated from Keenan & Sveiven for the off-season, and again utilized his DEED account to receive unemployment benefits.

In order to determine eligibility for benefits, DEED requires applicants to submit an electronic survey each week. One of the survey questions asks the applicant whether he is looking for work. In December 2008, relator received a warning when he indicated on the survey that he was not looking for work. DEED advised relator that he must be actively seeking employment in order to remain eligible for unemployment benefits. But the following week, relator again stated in his survey response that he was not actively seeking employment. DEED determined that relator was ineligible to receive benefits that week.

Relator appealed his ineligibility determination, and the ULJ conducted a tele-

phonic hearing. When relator was asked where he had applied for work, relator testified, "I haven't applied for work for anybody. [Keenan & Sveiven doesn't] want me to. I go to trainings." When the ULJ informed relator that an applicant for benefits has to be actively seeking employment, relator stated that his co-workers had told him that seasonal employees do not need to seek employment in the off-season. Relator acknowledged that he had not applied for jobs during any of the off-seasons that he had collected unemployment benefits, dating back to 2005. But relator testified that he had "asked around for work."

The ULJ determined that relator was ineligible for unemployment benefits. The ULJ concluded that

> [f]or the last two years, [relator] has not applied for a single position in the four plus months that he has been unemployed each year. He has stayed in touch with [his boss], but his efforts hardly constitute those of one who is genuinely interested in obtaining suitable employment. [Relator's] efforts, or lack thereof, do not qualify as actively seeking suitable employment.

Based on these findings, the ULJ determined that relator was ineligible for benefits during the period of December 2007 through February 2009. As a result, the ULJ concluded that relator owed $8,775 in overpayment of benefits.

With the assistance of counsel, relator requested reconsideration. Relator argued that "[t]he law in Minnesota allows seasonal workers to collect unemployment while they are laid off from their seasonal jobs." With his request for reconsideration, relator submitted two affidavits, one from himself and one from his boss.[1] Relator's affidavit asserts that he was in constant contact with his employer during each off-season and that he attended seminars and training courses during the off-season. The affidavit of Tim Sveiven, relator's supervisor, asserts that the company performs no work in the winter, that relator was in weekly contact with Sveiven during the off-seasons of 2007 and 2008, that the company "pays unemployment on [relator],"[2] and that relator is required to attend seminars and training during the off-season.

The ULJ affirmed her ineligibility determination. The ULJ stated that relator "has done nothing to obtain suitable employment over the five months each year that he is unemployed other than stay in contact with his previous employer. Regardless of whether [relator] is a seasonal employee, his efforts hardly qualify as 'actively seeking [work].'" The ULJ concluded that "[b]ased on a review of the information submitted by [relator] in his request for reconsideration and during the evidentiary proceeding, it is concluded that

---

**1.** Relator attached five additional affidavits to his appellate brief. These affidavits were not included in the record, and it does not appear that they were ever submitted to the ULJ. Accordingly, they are not part of the record on appeal. *See* Minn. R. Civ.App. P. 110.01 (stating that the record on appeal consists of "[t]he papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any"); Minn. R. Civ.App. P. 115.04, subd. 1 ("To the extent possible, the provisions of Rule[ ] 110 ... respecting the record ... in appeals shall govern upon the issuance of the

writ and the parties shall proceed as though the appeal had been commenced by the filing of a notice of appeal...."). Therefore, we do not consider these affidavits in our analysis.

**2.** This assertion appears to be for the benefit of relator's argument raised in his request for reconsideration that because his employer paid unemployment for him, he was entitled to receive the benefits or be excused from paying the overpayment. This argument is not raised on appeal.

a different result is not warranted." This certiorari appeal follows.

## ISSUES

I. Is an employee who is seasonally unemployed required to meet the eligibility requirements of Minn.Stat. § 268.085 (2008)?

II. Is the ULJ's ineligibility determination supported by substantial evidence?

## ANALYSIS

 On review, this court may affirm a ULJ's decision, remand it for further proceedings, or reverse or modify it

if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are:

(1) in violation of constitutional provisions;

(2) in excess of statutory authority or jurisdiction of the department;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) unsupported by substantial evidence in view of the entire record as submitted; or

(6) arbitrary or capricious.

Minn.Stat. § 268.105, subd. 7(d) (2008). "This court views the ULJ's factual findings in the light most favorable to the decision. This court also gives deference to the credibility determinations made by the ULJ. As a result, this court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn.App.2008) (citations omitted), *review denied* (Minn. Oct. 1, 2008).

## I. Is an employee who is seasonally unemployed required to meet the eligibility requirements of Minn.Stat. § 268.085?

Relator argues that as a seasonal employee, he is entitled to unemployment benefits during the off-season, irrespective of the statutory requirements for benefits eligibility. If an applicant is laid off due to lack of work, no issue of ineligibility is automatically raised that requires a determination by DEED. Minn.Stat. § 268.101, subd. 1(a) (2008). To be eligible for benefits if an applicant is not laid off due to lack of work, or to remain eligible for unemployment benefits if the applicant is laid off for lack of work, an applicant must meet the following criteria:

(1) the applicant has an active benefit account and has filed a continued request for unemployment benefits for that week ...;

(2) the week for which unemployment benefits are requested is in the applicant's benefit year;

(3) the applicant was unemployed as defined in section 268.035, subdivision 26;

(4) the applicant was able to work and was available for suitable employment, and was actively seeking suitable employment....;

(5) the applicant has served a nonpayable waiting period of one week that the applicant is otherwise entitled to some amount of unemployment benefits....; and

(6) the applicant has been participating in reemployment assistance services... if the applicant has been determined in need of reemployment assistance services by the commissioner[.]

Minn.Stat. § 268.085, subd. 1. An applicant must satisfy all six eligibility requirements in order to receive unemployment

benefits from the state trust fund. Minn. Stat. § 268.069, subd. 1(3) (2008).

■ Relator is correct that seasonal employees may collect unemployment benefits; under section 268.101, subdivision 1(a), an applicant is not ineligible for benefits simply because he or she was laid off due to lack of work during an off-season. But there is no statutory support for appellant's assertion that he does not need to comply with the requirements found in section 268.085, subdivision 1. In fact, Minn.Stat. § 268.085, subd. 16(c), is explicit—seasonal employees must actively seek employment to be eligible for unemployment benefits. "If reasonable prospects of suitable employment in the applicant's usual or customary occupation do not exist, the applicant must actively seek other suitable employment to be considered 'actively seeking employment.' This applies to an applicant who is seasonally unemployed." Minn.Stat. § 268.085, subd. 16(c). Nothing in the statute exempts seasonal employees from the unemployment-benefits requirements. The criteria in section 268.085, subdivision 1, apply to all applicants, regardless of whether section 268.101, subdivision 1(a), also applies. Although relator's lay-off in December did not raise an issue of eligibility (thus permitting relator to initially collect unemployment benefits), relator was nevertheless required to comply with the requirements outlined in section 268.085, subdivision 1, in order to remain eligible. The ULJ did not err in holding relator to those statutory requirements.[3]

## II. Is the ULJ's determination that relator is ineligible for benefits supported by substantial evidence?

■ Relator contends that the record does not contain substantial evidence to support the ULJ's determination that he was not actively seeking employment. To be considered "actively seeking employment," an applicant must make "those reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in obtaining suitable employment under the existing conditions in the labor market area." Minn.Stat. § 268.085, subd. 16(a). "Limiting the search to positions that are not available ... is not 'actively seeking suitable employment.'" Id. Furthermore, "[i]f reasonable prospects of suitable employment in the applicant's usual or customary occupation do not exist, the applicant must actively seek other suitable employment.... This applies to an applicant who is seasonally unemployed." Id., subd. 16(c).

The Minnesota Supreme Court has held that the acts of regularly reading newspaper and journal advertisements, conducting a single search of a job data bank, and applying for two or three positions in two months do not constitute actively seeking employment. *Monson v. Minn. Dep't of Employment Servs.*, 262 N.W.2d 171, 172 (Minn.1978). Likewise, this court has held that an individual who makes four job contacts in three weeks, all by telephone, is not actively seeking employment.

---

**3.** Relator also asserts that *Herbst v. N. States Power Co.*, 432 N.W.2d 463 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989), supports the conclusion that he is entitled to benefits. But *Herbst* concerned the computation of lost wages in a negligence cause of action. 432 N.W.2d at 468. Apparently, testimony at the trial indicated that construction workers receive unemployment benefits in the winter because their work is seasonal. *Id.* But this case does not support the proposition that a seasonal employee, simply by virtue of being a seasonal employee, is entitled to benefits without following the statutory requirements. *Herbst* was not an unemployment-benefit case and relator's reliance on its language is misplaced.

*James v. Comm'r of Econ. Sec.*, 354 N.W.2d 840, 841–42, 844 (Minn.App.1984), *review denied* (Minn. Dec. 20, 1984). But when an applicant made "multiple telephone and in-person 'networking' contacts with five prospective employers [two of which reached a network of over 100 publications] ... had formal interviews with one employer ... interviewed for an out-of-town position," and attempted to become self-employed over an 11–week period, we concluded that the applicant had been actively seeking employment. *Decker v. City Pages, Inc.*, 540 N.W.2d 544, 549–50 (Minn.App.1995).

■ Relator testified that he "asked around for work" but did not apply for any positions. He also testified that Keenan & Sveiven did not want him to work during the off-season. On this record, relator failed to engage in any reasonable effort to find employment during his off-seasons.[4] Therefore, we conclude that the record contains substantial evidence to support the ULJ's finding that relator was not actively seeking employment during the winter months of 2007 and 2008.

## DECISION

Because relator was required to meet the requirements in Minn.Stat. § 268.085, subd. 1, in order to be eligible for unemployment benefits and because the ULJ's conclusion that relator failed to actively seek employment during the time that he received benefits is supported by substantial evidence in the record, the ULJ did not err by finding relator ineligible for unemployment benefits.

**Affirmed.**

___

4. Even if we considered the information included in relator's five affidavits, we would reach the same conclusion. The additional affidavits only indicate that relator contacted the same five employers on numerous occasions despite being told that they had no work available. Relator never submitted applications or résumés to employers and did not broaden his search in either off-season to explore opportunities beyond these five companies. These efforts do not meet the standard of "actively seeking employment." *See Pyeatt v. State, Dep't of Employment Servs.*, 263 N.W.2d 394, 395 (Minn.1978) (holding that the relator's job search was inadequate when he applied for six or seven positions over an eight-month period).